UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**ANGELA SLOCUMB,**

        **Plaintiff,**

-vs-                                                             Case No.  8:13-cv-504-T-DNF

**CAROLYN W. COLVIN, Acting
Commissioner of Social Security,**

        **Defendant.**

_____

## OPINION AND ORDER

Plaintiff, Angela Slocumb, seeks judicial review of the final decision of the Commissioner of the Social Security Administration denying her claim for a period of disability, Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI")[1].  The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda in support of their positions.  For the reasons set out herein, it is respectfully recommended that the decision of the Commissioner be **AFFIRMED**, pursuant to § 205(g) of the Social Security Act, 42 U.S.C § 405(g).

**I.**     **Social Security Act Eligibility, Procedural History, and Standard of Review**

The law defines disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to

---

[1] Because the disability definitions for DIB and SSI are identical, cases under one statute are persuasive as to the other.  *Patterson v. Bowen*, 799 F.2d 1455, 1456 (n.1 (11th Cir. 1986); *McCruter v. Bowen*, 791 F.2d 1544, 1545 n.2 (11th Cir. 1986).

result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(I), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d) (2); 20 C.F.R. §§ 404.1505-404.1511.

A.     **Procedural History**

On April 20, 2009, Plaintiff applied for a period of disability, DIB and SSI, alleging a disability onset date of June 3, 2004. (Tr. 11). Plaintiff's request for benefits was denied on November 25, 2009, and upon reconsideration on February 26, 2010. (Tr. 11). An administrative hearing was held before Administrative Law Judge Tony L. Eberwein (the "ALJ") on April 27, 2011. (Tr. 28). An impartial Vocational Expert ("VE") William Harvey appeared and testified at the hearing. On June 6, 2011, the ALJ rendered his decision, in which he determined that Plaintiff was not disabled within the meaning of the Social Security Act from June 3, 2004, through the date of the ALJ's decision. (Tr. 18). Plaintiff's Request for Review was denied by the Appeals Council on January 15, 2013. (Tr. 1-5). Plaintiff brought the instant suit on February 22, 2013.

B.     **Summary of ALJ's Decision**

An ALJ must follow a five-step sequential evaluation process to determine if a claimant has proven that he is disabled. *Packer v. Commissioner of Social Security*, 2013 WL 5788574, at *1 (11th Cir. Oct. 29, 2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). An ALJ must determine whether the claimant (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) can perform his past relevant work; and (5) can

perform other work of the sort found in the national economy. *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004). The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five. *Hines-Sharp v. Commissioner of Soc. Sec.*, 511 Fed. App'x 913, 915 n.2 (11th Cir. 2013).

The ALJ found that Plaintiff met the Social Security Act's insured status requirements through March 31, 2008. (Tr. 13). At step one of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 3, 2004. (Tr. 25). At step two, the ALJ determined that Plaintiff has the following severe impairments: (1) cervical spine surgery, (2) chronic obstructive pulmonary disease ("COPD"), (3) history of substance abuse, (4) lumbar stenosis, and (5) depression. (Tr. 13). The ALJ found that the foregoing impairments impose more than minimal functional restrictions on the Plaintiff's ability to perform the basic requirements of work. (Tr. 13). The ALJ acknowledged that Plaintiff has one medical record listing a diagnosis of hepatitis C, but due to the lack of treatment history or medical evidence, found that it was not a severe impairment. (Tr. 14). For this reasons, the ALJ did not consider the hepatitis C diagnosis in evaluating Plaintiff's disability. (Tr. 14).

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). (Tr. 14). Before proceeding to step four, the ALJ considered Plaintiff's entire medical record and found that she has the residual functional capacity ("RFC") "to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she may perform no reaching overhead, she can't look down, she should have no exposure to dust, fumes, or smoke, and she should only do simple 1-4 step work." (Tr. 15). At step four, the ALJ found

that Plaintiff is unable to perform her past relevant work as a hair stylist, merchandise clerk, or laborer. (Tr. 17). At step five, considering Plaintiff's age, education, work experience, and RFC, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (Tr. 18). Relying on the testimony of a vocational expert, the ALJ found that an individual with Plaintiff's age, education, work experience, and RFC, could work as an order clerk, telephone clerk, or scale attendant. (Tr. 18). Based on these findings, the ALJ concluded that Plaintiff has not been under a disability, as defined by the Social Security Act from June 3, 2004, through the date of the ALJ's decision. (Tr. 18).

### C. Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405 (g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate support to a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Martin v. Sullivan*, 894 F.2d 1329, 1330 (11th Cir. 2002); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). However, the District Court will reverse the Commissioner's decision on plenary review if the decision applied incorrect law, or if the decision fails to provide sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't. of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). The Court reviews de novo the conclusions of law

made by the Commissioner of Social Security in a disability benefits case. Social Security Act, § 205(g), 42 U.S.C.A. § 405(g).

## II. Specific Issues and Conclusions of Law

Plaintiff raises three issues on appeal. (Doc. 24 p.12-15). They are: (1) whether the ALJ erred by inferring the severity of Plaintiff's disabilities from a lack of medical treatment; (2) whether the ALJ erred in rejecting Plaintiff's complaints of pain and fatigue; and (3) whether the ALJ erred in failing to give proper weight to the vocational evidence that absenteeism would render Plaintiff unemployable. (Doc. 24 p. 12-15). The Court will address each issue in turn.

### a) Whether the ALJ erred by inferring the severity of Plaintiff's disabilities from a lack of medical treatment

Plaintiff argues that the ALJ erred in considering Plaintiff's lack of medical treatment in determining the severity of her disabilities. (Doc. 24 p. 12). Plaintiff argues that the ALJ wrongly disregarded her testimony that she was unable to afford medical treatment until 2009 when she started receiving Medicaid. (Doc. 24 p. 12). Additionally, Plaintiff contends that the ALJ erred by wrongly considering the lack of medical treatment in his analysis of Plaintiff's mental health treatment. (Doc. 24 p. 12-13). Plaintiff argues that the ALJ compounds this error by finding that once Plaintiff gets on medication, that her symptoms are only mild. (Doc. 24 p. 13). According to Plaintiff, her Global Assessment of Functioning ("GAF") scores have been consistently low and have no relationship to whether or not she is being treated. (Doc. 24 p. 14).

Defendant responds that the ALJ did not err by considering Plaintiff's sporadic treatment for her allegedly disabling impairments. (Doc. 25 p. 7). Defendant argues that contrary to Plaintiff's claim that she could not afford treatment, the record demonstrates that Plaintiff had access to treatment and medication from a variety of sources during the relevant period from 2004 to 2009. (Doc. 25 p. 7). Additionally, Defendant argues that the ALJ's decision was not

-5-

based solely on Plaintiff's noncompliance with treatment or medication. (Doc. 25 p. 7). According to Defendant, the ALJ considered Plaintiff's sporadic treatment as just one factor among many that undermined the alleged severity of Plaintiff's symptoms. (Doc. 25 p. 7-8). Defendant argues that the ALJ did not err in considering Plaintiff's treatment notes that showed Plaintiff's GAF scores indicated only mild symptoms when she complied with her medication versus moderate or serious symptoms when she was noncompliant. (Doc. 25 p. 8).

In his opinion the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent that they are inconsistent with the ALJ's RFC finding. (Tr. 16). The ALJ found that Plaintiff's alleged depression is only partially credible. (Tr. 16). The ALJ noted that Plaintiff's treatment throughout the years has been extremely sporadic, raising doubts as to the severity of her symptoms. (Tr. 16). The ALJ noted that although Plaintiff's most recent GAF scores were in the 50s, Plaintiff also had a GAF score in the 60s, indicating that once she is on medication, her symptoms are only mild. (Tr. 17). Additionally, the ALJ noted that a treating source indicated in March 2010 that Plaintiff's main obstacle to recovery was her non-compliance with both her medication and appointments. (Tr. 17).

In regards to Plaintiff's pain issues, the ALJ again noted that beyond surgery in the late 1980s and pain medication now, Plaintiff's treatment history is very sporadic. (Tr. 17). The ALJ noted that Plaintiff was recently seen by Dr. Todd Lasner who did not recommend any surgical intervention for Plaintiff nor any other treatment avenues. (Tr. 17). The ALJ noted that Plaintiff was evaluated the previous year by Lakes Wales Medical Center, which found a host of issues, but none of which were serious enough to recommend further treatment. (Tr. 17).

In this case, the Court finds that the ALJ did not err by considering Plaintiff's sporadic treatment for her allegedly disabling impairments. Although Plaintiff argues that she was unable to afford medical treatment until 2009, Plaintiff has failed to show a single instance in which she was denied health care due to her finances. On the contrary, the record indicates that Plaintiff had access to treatment and medication via Lakes Wales Medical Center and Winter Haven Hospital during the relevant period from 2004-2009. (Tr. 374-404, 529-50, 817-41, 884-905, 950-51, 956-59, 1011-1038). Additionally, while incarcerated from 2005-2006, Plaintiff had access to health care and after she received Medicaid in 2009. (Tr. 41, 407-527, 560-648, 691-94, 717-816, 1039-1064). Notably, even after she had Medicaid in 2009, a Discharge Summary from Mid Florida Medical Services dated October 19, 2010, noted that Plaintiff's barriers to successful treatment were her non-compliance with medication and counseling. (Tr. 1040).

Further, a review of the ALJ's opinion shows that the ALJ's decision to find Plaintiff's allegations of her symptoms as only partially credible is not solely based on Plaintiff's sporadic treatment. In reaching his credibility determination, the ALJ noted that there is evidence indicating that Plaintiff's symptoms of depression are only mild when she is on medication. (Tr. 17). For example, in Plaintiff's most recent medical health treatment records from 2010, Mid Florida Medical Services assigned Plaintiff a GAF score of 65-68, indicating only mild symptoms. (Tr. 1041-43). The ALJ noted that Plaintiff's COPD was diagnosed as mild in 2008 and that despite being diagnosed with a host of issues, none of these issues were serious enough to warrant further treatment. In August 2010, Dr. Todd Lasner noted that cervical x-rays did not reveal any gross instability, opining that Plaintiff did not need surgery. (Tr. 1059-1060). Instead, Dr. Lasner recommended further treatment only for "routine reevaluation on an as-needed basis."

(Tr. 1060). For these reasons, the Court finds that the ALJ did not err in his consideration of Plaintiff's sporadic treatment history in his credibility finding as to Plaintiff's symptoms.

### b) Whether the ALJ erred in rejecting Plaintiff's complaints of pain and fatigue

Plaintiff argues that the ALJ erred by failing to address Plaintiff's complaints of neck pain and fatigue. (Doc. 24 p. 14-15). According to Plaintiff, her complaints of neck pain are credible given her history of neck surgery in 1987 and 1998 and the fact that her neck is fused. (Tr. 24 p. 15). This pain prohibits her from moving her head down and limits her other neck movements. (Tr. 24 p. 15). Also, Plaintiff argues that the level of fatigue she testified to is credible given her diagnosis of hepatitis C and her breathing problems, and the ALJ does not address the fatigue at all in his decision.

The Eleventh Circuit three-part pain standard that applies whenever a claimant asserts disability through testimony of pain or other subjective symptoms requires (1) evidence of an underlying medical condition and either (2) objective medical evidence confirming the severity of the alleged pain arising from that condition, or (3) that the objectively determined medical condition is of such a severity that it can be reasonably be expected to cause the alleged pain. *Foote v. Charter*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Kelly v. Apfel*, 185 F.3d 1211, 1215 (11th Cir. 1999). After considering claimant's subjective complaints, the ALJ may reject them as not credible, and that determination may be reviewed for substantial evidence. *Marbury v. Sullivan*, 957 F.2d 837 (11th Cir. 1992). If the objective medical evidence does not confirm the severity of the alleged symptoms, but indicates that the claimant's impairment could reasonably be expected to produce some degree of pain and other symptoms, the ALJ evaluates the intensity and persistence of the claimant's symptoms and their effect on his ability to work by considering the objective medical evidence, the claimant's daily activities, treatment and medications

received, and other factors concerning functional limitations and restrictions due to pain. *See* 20 C.F.R. § 404.1529.

In this case, although the ALJ did not specifically address Plaintiff's subjective complaints of neck pain, the ALJ nevertheless specified in his RFC finding that Plaintiff "can't look down." (Tr. 15). The ALJ's inclusion of this limitation demonstrates that the ALJ found Plaintiff's complaints of neck pain credible and limited Plaintiff's RFC accordingly. At the hearing, the VE testified that even with the limitation that Plaintiff "can't look down," the Plaintiff can nevertheless work the jobs of order clerk, telephone clerk, and scale attendant. (Tr. 18, 57-58). Thus, as the ALJ's RFC determination included a limitation addressing Plaintiff's disability due to neck pain, the Court finds that the ALJ did not err in his consideration of Plaintiff's subjective complaints of neck pain.

As to Plaintiff's subjective complaints of fatigue caused by hepatitis C and breathing problems, although Plaintiff is correct in noting that the ALJ failed to discuss this alleged limitation in his opinion, the Court finds that the ALJ did not commit reversible error on this ground. As stated above, Plaintiff has the burden of proving that she is disabled. *See* 20 C.F.R. §§ 404.1512(c), 416.912(c); *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). In this case, Plaintiff has failed to provide any medical evidence corroborating her testimony that she experiences fatigue to such a degree that she often sleeps all day and all night. Thus, there is no objective medical evidence confirming the severity of Plaintiff's fatigue. Additionally, Plaintiff has failed to identify any objectively determined medical condition that is of such a severity that it can be reasonably expected to cause Plaintiff's fatigue. As noted above, the ALJ did not find Plaintiff's diagnosis of hepatitis C to be a severe impairment as there was no history of treatment or any evidence that this condition had affected Plaintiff's health in the least. (Tr. 14). Additionally, the ALJ noted that

Plaintiff's COPD was diagnosed as "mild" in 2008. (Tr. 17). Given these findings, the Court finds that there is no evidence that Plaintiff's diagnosis of hepatitis C or COPD are of such a severity that they are reasonably expected to cause the level of fatigue Plaintiff alleges. Accordingly, the Court finds that the ALJ did not err by failing to discuss Plaintiff's complaint of fatigue and not including a limitation in his RFC finding for fatigue.

    c) **Whether the ALJ erred in failing to give proper weight to the vocational evidence that absenteeism would render Plaintiff unemployable**

Plaintiff provides that she would have at least three to four days of absence from work per month due to her complaints of fatigue and pain. (Doc. 24 p. 16) Plaintiff argues that, based on the testimony of the VE, such absenteeism would make it impossible for a person to maintain employment. (Doc. 24 p. 16). Defendant responds that the ALJ was not obligated to accept the VE's response to a hypothetical question that presumed Plaintiff's alleged subjective symptoms were fully credible, and that the ALJ's decision is supported by substantial evidence. (Doc. 25 p. 9-10).

"In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Gordon v. Astrue,* 249 Fed. App'x 810, 813 (11th Cir. 2007) (citing *Vega v. Comm. of Soc. Sec.,* 265 F.3d 1214, 1220 (11th Cir. 2001). An ALJ is not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported. *Crawford v. Comm. of Soc. Sec.,* 363 F.3d 1155, 1161 (11th Cir. 2004).

In this case, the ALJ posed a hypothetical question to the VE that accurately described Plaintiff's RFC and vocational profile. In response to this hypothetical, the VE testified that Plaintiff could perform unskilled sedentary jobs that existed in significant numbers nationally, such as order clerk, telephone clerk, and scale attendant. As explained above, the ALJ's RFC

determination was supported by substantial evidence and the ALJ did not err by failing to include additional limitations. Thus, as the hypothetical question comprised all of Plaintiff's impairments, the ALJ did not err in failing to give weight to the VE's testimony that absenteeism would render Plaintiff unemployable.

### III.   Conclusion

The Court finds that the ALJ's decision is consistent with the requirements of the law and is supported by substantial evidence. For the reasons explained above, it is hereby **ORDERED:**

1) The final decision of the Commissioner is **AFFIRMED**.

2) The Clerk is directed to enter judgment for the Commissioner and close the case.

**DONE** and **ORDERED i**n Fort Myers, Florida on February 13, 2014.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties